UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS,
DALLAS DIVISION

| | |
|---|---|
| **SB PREMIUM, LLC**<br>**Plaintiff,**<br><br>v.<br><br>**WOLFPACK WHOLESALE, INC., WOLFPACK WHOLESALE 2, LLC, VAPEWILD LLC, VAPORIUM LLC DBA SKYLINE VAPOR, ERIC TURNER, KEVIN THURMAN, AND MATTHEW WEINER**<br><br>**Defendants.** | Civil Action No. _____<br><br>Jury Trial Demanded |

## ORIGINAL COMPLAINT

Plaintiff SB Premium, LLC files this Original Complaint as follows:

### NATURE OF THE ACTION AND JURY DEMAND

1. This is an action for trademark and trade dress infringement and false designation of origin, and/or false or misleading description of fact, and/or false or misleading representation of fact under the Lanham Act (15 U.S.C. §§ 1114, 1116, 1117, and 1125(a)); and for trademark infringement, unfair competition, and unjust enrichment under the common law of the State of Texas. A trial by jury is demanded pursuant to Rule 38 of the Federal Rules of Civil Procedure.

### JURISDICTION AND VENUE

2. Jurisdiction over the parties and subject matter of this action is proper in this Court pursuant to 15 U.S.C. § 1121 (actions arising under the Lanham Act), 28 U.S.C. § 1331 (actions arising under the laws of the United States), and § 1338(a) (actions arising under an Act

1

of Congress relating to trademarks). This Court has supplemental jurisdiction over the claims in this Complaint that arise under state common law pursuant to 28 U.S.C. § 1367(a).

3. This Court has personal jurisdiction over the Defendants because they do business and/or reside in the State of Texas.

4. Venue is properly founded in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants reside in this District, may be found in this District, and/or a substantial part of the events giving rise to the claims in this action occurred within this District.

## PARTIES

5. Plaintiff SB Premium, LLC ("SB Premium") is a limited liability company duly organized and existing under the laws of the State of Texas, with its principal place of business in Carrollton, Texas, and is the assignee of SB Products, a Texas general partnership, with respect to the trademarks and trade dresses and associated goodwill as well as all claims and causes and rights of action which are the subject matter of this Complaint. "SB Products" as used hereinafter in this Complaint shall, when appropriate, as a factual and/or legal matter, refer to SB Products, a Texas general partnership, as well as, when appropriate, as a factual and/or legal matter, to Plaintiff SB Premium, including without limitation, in its capacity as assignee of SB Products as described above.

6. Upon information and belief, Defendant Wolfpack Wholesale, Inc. ("Wolfpack") is a corporation duly organized and existing under the laws of the State of Texas and operating a business at 1800 10th Street, Suite 300, Plano, Texas 75074. Wolfpack has its principal place of business in the State of Texas. Wolfpack may be served through Eric Turner, its registered agent for service, at 1800 10th Street, Suite 300, Plano, Texas 75074, or wherever he may be found.

7. Upon information and belief, Defendant Wolfpack Wholesale 2, LLC ("Wolfpack

2") is a limited liability company duly organized and existing under the laws of the State of Texas and operating a business at 1800 10th Street, Suite 300, Plano, Texas 75074. Wolfpack 2 has its principal place of business in the State of Texas. Wolfpack 2 may be served through Eric Turner, its registered agent for service, at 4408 Sunbelt, Addison, Texas 75001, or at 1800 10th Street, Suite 300, Plano, Texas 75074, or wherever he may be found.

8. Upon information and belief, Defendant VapeWild LLC ("VapeWild") is a limited liability company duly organized and existing under the laws of the State of Texas and operating a business at 4550 Excel Parkway, Suite 100, Addison, Texas 75001-9625. VapeWild has its principal place of business in the State of Texas. VapeWild may be served through Eric Turner, its registered agent for service, at 1800 10th Street, Suite 300, Plano, Texas 75074, or wherever he may be found.

9. Upon information and belief, Defendant Vaporium LLC is a limited liability company duly organized and existing under the laws of the State of Texas and operating a business under the assumed name Skyline Vapor ("Skyline Vapor") at 4550 Excel Parkway, Suite 100, Addison, Texas 75001-9625. Skyline Vapor has its principal place of business in the State of Texas. Skyline Vapor may be served through United States Corporation Agents, Inc., its registered agent for service, at 9900 Spectrum Drive, Austin, Texas 78717, or wherever it may be found. (Defendants Wolfpack, Wolfpack 2, VapeWild, and Skyline Vapor are collectively referred to hereinafter as the "Wolfpack Defendants").

10. Upon information and belief, Defendant Eric Turner is an individual residing in Dallas, Texas. Defendant Turner is a co-owner, co-operator, and/or co-managing agent of the Wolfpack Defendants and may be served at 14944 Lacehaven Drive, Dallas, Texas 75248-5543, or wherever he may be found.

11. Upon information and belief, Defendant Kevin Thurman is an individual residing in Frisco, Texas. Defendant Thurman is a co-owner, co-operator, and/or co-managing agent of the Wolfpack Defendants and may be served at 5429 Quail Run, Frisco, Texas 75034, or wherever he may be found.

12. Upon information and belief, Defendant Matthew Weiner is an individual residing in Allen, Texas. Defendant Weiner is a co-owner, co-operator, and/or co-managing agent of the Wolfpack Defendants and may be served at 877 Clear Water Drive, Allen, Texas 75013-5061, or wherever he may be found.

13. At all relevant times herein, Defendants knew or reasonably should have known of the acts and behavior alleged herein and the damages caused thereby, and by their actions and inactions ratified and encouraged such acts and behavior.

### ERIC TURNER, KEVIN THURMAN, AND MATTHEW WEINER - PERSONAL LIABILITY

14. Upon information and belief, at all relevant times Defendants Eric Turner, Kevin Thurman, and Matthew Weiner personally, knowingly, and actively participated in and/or had the ability and right to, and in fact did, supervise, direct, and control the infringing activities occurring at, and/or by, and/or through, the Wolfpack Defendants and alleged in this Complaint. Upon information and belief, Defendants Eric Turner, Kevin Thurman, and Matthew Weiner derived direct financial benefits from the infringing activities alleged in this Complaint. As a result, Defendants Eric Turner, Kevin Thurman, and Matthew Weiner are liable individually, contributorily, vicariously, and jointly and severally along with the Wolfpack Defendants, to SB Products for the infringing activities of the Wolfpack Defendants alleged in this Complaint.

## FACTS COMMON TO ALL CLAIMS

15. Operating under the trade name "Suicide Bunny" at all relevant times, SB Products, has developed, advertised, marketed, offered for sale, distributed, and sold in interstate commerce and internationally, either directly or indirectly through an authorized licensee, electronic cigarette liquid ("E-Liquid") used to refill electronic cigarette cartridges in distinctive packaging developed by SB Products and bearing SB Products' trademarks "Suicide Bunny," "King's Crown," and "The Cloud Company" (collectively, the "Trademarks" or "SB Trademarks"). On or about October 1, 2013, SB Products first began using its Suicide Bunny trademark in commerce. On or about October 1, 2013, SB Products first began using its King's Crown trademark in commerce. On or about April 1, 2015, SB Products first began using its The Cloud Company trademark in commerce.

16. On or about December 1, 2013, SB Products entered into an Exclusive Distribution Agreement with Wolfpack Imports, LLC (now known as Defendant Wolfpack Wholesale, Inc.) pursuant to which SB Products granted Wolfpack Imports, LLC the exclusive right to market, sell, and distribute SB Products' E-Liquid products worldwide using SB Products' distinctive packaging and bearing SB Products' trademarks. On or about April 23, 2014, Wolfpack Imports, LLC was converted to Defendant Wolf Wholesale, Inc.

17. SB Products duly and properly registered the Trademarks in the United States Patent and Trademark Office on the Principal Register, as follows:

   A. "SUICIDE BUNNY," Trademark Registration No. 4,851,317 (a true and correct copy of which is attached to this Complaint as Exhibit "A" and incorporated by reference), Registration Date November 10, 2015, for chemical flavorings in liquid form used to refill electronic cigarette cartridges; electronic cigarette liquid (e-liquid) comprised of flavorings

5

in liquid form used to refill electronic cigarette cartridges; electronic cigarette liquid (e-liquid) comprised of propylene glycol; electronic cigarette liquid (e-liquid) comprised of vegetable glycerin; flavorings other than essential oils, for use in electronic cigarettes; liquid nicotine solutions for use in electronic cigarettes;

        B.     "KING'S CROWN," Trademark Registration No. 4,900,643 (a true and correct copy of which is attached to this Complaint as Exhibit "B" and incorporated by reference), Registration Date February 16, 2016, for chemical flavorings in liquid form used to refill electronic cigarette cartridges; electronic cigarette liquid (e-liquid) comprised of flavorings in liquid form used to refill electronic cigarette cartridges; electronic cigarette liquid (e-liquid) comprised of propylene glycol; electronic cigarette liquid (e-liquid) comprised of vegetable glycerin; flavorings other than essential oils, for use in electronic cigarettes; liquid nicotine solutions for use in electronic cigarettes; and

        C.     "THE CLOUD COMPANY," Trademark Registration No. 4,907,778 (a true and correct copy of which is attached to this Complaint as Exhibit "C" and incorporated by reference), Registration Date March 1, 2016, for chemical flavorings in liquid form used to refill electronic cigarette cartridges; electronic cigarette liquid (e-liquid) comprised of flavorings in liquid form used to refill electronic cigarette cartridges; electronic cigarette liquid (e-liquid) comprised of propylene glycol; electronic cigarette liquid (e-liquid) comprised of vegetable glycerin; flavorings other than essential oils, for use in electronic cigarettes; liquid nicotine solutions for use in electronic cigarettes.

    18.     These registrations are valid and in full force and effect.

19. The registration of the Trademarks constitutes *prima facie* evidence of their validity and conclusive evidence of SB Products' exclusive right to use the Trademarks in connection with the goods identified therein.

20. The SB Trademarks have been continuously used and have never been abandoned.

21. SB Products has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the SB Trademarks with respect to its E-Liquid products. As a result, products bearing the SB Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products sourced from Suicide Bunny/SB Products. As a result of extensive use and promotion, the SB Trademarks have acquired a favorable reputation among consumers as an identifier and symbol of Suicide Bunny/SB Products and its products and goodwill.

22. SB Products has also expended substantial time, money, and expense to develop unique and distinctive trade dresses consisting of a combination of one or more features, including colors, distinctive graphics/artwork depicting female characters, various logos which include the Suicide Bunny trademarks, hand-written notes from "Pip," the moniker for Tiffany Gresham who is the creative force behind SB Products' line of E-Liquid products, and other non-functional elements used on the labels for SB Products' E-Liquid products in conjunction with the SB Trademarks (the "Trade Dresses" or the "SB Trade Dresses").

23. Consumers identify Suicide Bunny/SB Products as the single source of high quality E-Liquid products bearing the SB Trade Dresses.

24. SB Products has employed the SB Trade Dresses associated with its E-Liquid products exclusively and without interruption, and the SB Trade Dresses have never been abandoned.

25. In or about May of 2016, SB Products terminated its relationship with Wolfpack Wholesale, Inc. As the result of SB Products' termination of its relationship with Wolfpack Wholesale, Inc., Wolfpack Wholesale, Inc. was no longer authorized to sell, market, or distribute SB Product's E-Liquid products or to use SB Products' Trademarks or Trade Dresses. On information and belief, in or about May of 2016, if not earlier, without SB Products' consent, Defendants began using and continue to use reproductions, counterfeits, copies, and/or colorable imitations of SB Products' Trademarks and Trade Dresses in interstate commerce and internationally in connection with selling, offering for sale, and/or advertising E-Liquid products or began and continue to reproduce, counterfeit, copy, or colorably imitate SB's Trademarks and Trade Dresses and apply such reproductions, counterfeits, copies, or colorable imitations to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used in interstate commerce and internationally on or in connection with the sale, offering for sale, distribution, and/or advertising of E-Liquid products (referred to collectively hereinafter as the "Infringing Products").

26. Upon information and belief, Defendants Eric Turner, Kevin Thurman, and Matthew Weiner knew of, were aware or should have been aware of, or were willfully blind to, or acted with reckless disregard with respect to, these infringing activities. Further, Defendants Eric Turner, Kevin Thurman, and Matthew Weiner had an obligation and ability to control and stop these infringements, but failed to do so. Indeed, Defendants Eric Turner, Kevin Thurman, and Matthew Weiner did not want the infringement to stop as, upon information and belief, they

received direct financial benefits from the infringement. These acts and failures to act by Defendants Eric Turner, Kevin Thurman, and Matthew Weiner materially contributed to the infringement.

27. All the Defendants are well aware of the inherent distinctiveness of the SB Trademarks and Trade Dresses, and the incalculable goodwill associated therewith.

28. Defendants have no license, authority, or other permission from SB Products to use any of the SB Trademarks or Trade Dresses in connection with the designing, manufacturing, advertising, promoting, distributing, selling, and/or offering for sale of the Infringing Products.

29. Defendants have been engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to SB Products' rights, or with bad faith, for the purpose of trading on the goodwill and reputation of the SB Trademarks, SB Trade Dresses, and E-Liquid products.

30. Defendants' activities, as described above, are likely to create a false impression and deceive consumers, the public, and the trade into believing that there is a connection or association between the Infringing Products and Suicide Bunny/SB Products.

31. Upon information and belief, Defendants intend to continue to design, manufacture, advertise, promote, distribute, sell, and/or offer for sale the Infringing Products, unless otherwise restrained.

32. SB Products is suffering irreparable injury for which it has no adequate remedy at law, and has suffered and continues to suffer substantial damages, as a result of Defendants' activities.

## COUNT I
### (Trademark Counterfeiting, 15 U.S.C. § 1114)

33. SB Products repeats and realleges the allegations set forth above as if fully set forth herein.

34. Defendants, without authorization from SB Products, have used and are continuing to use in commerce spurious designations that are identical to, or substantially indistinguishable from, the SB Trademarks.

35. The foregoing acts of Defendants are intended to cause, have caused, and are likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that Defendants' Infringing Products are genuine or authorized products of Suicide Bunny/SB Products.

36. Upon information and belief, Defendants have acted with knowledge (or actual notice) of SB Products' ownership and registration of the SB Trademarks and with deliberate intention or willful blindness to unfairly benefit from the incalculable goodwill inherent in the SB Trademarks.

37. Defendants' acts constitute trademark counterfeiting in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114).

38. Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

39. Upon information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court.

40. Defendants' acts have damaged and will continue to damage SB Products. Further, SB Products is suffering irreparable injury for which it has no adequate remedy at law.

## COUNT II
### (Trademark Infringement, 15 U.S.C. § 1114)

41. SB Products repeats and realleges the allegations set forth above as if fully set forth herein.

42. Defendants, without authorization from SB Products, have used and are continuing to use in commerce spurious designations that are confusingly similar, if not identical, to the SB Trademarks.

43. The foregoing acts of Defendants are intended to cause, have caused, and are likely to continue to cause confusion, mistake, and deception among consumers, the public, and the trade as to whether Defendants' Infringing Products originate from, or are affiliated with, sponsored by, or endorsed by Suicide Bunny/SB Products.

44. Upon information and belief, Defendants have acted with knowledge (or actual notice) of SB Products' ownership and registration of the SB Trademarks and with deliberate intention or willful blindness to unfairly benefit from the incalculable goodwill symbolized thereby.

45. Defendants' acts constitute trademark infringement in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114).

46. Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

47. Upon information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court.

48. Defendants' acts have damaged and will continue to damage SB Products. Further, SB Products is suffering irreparable injury for which it has no adequate remedy at law.

## COUNT III
### (Trade Dress Infringement, 15 U.S.C. § 1125(a))

49. SB Products repeats and realleges the allegations set forth above as if fully set forth herein.

50. The SB Trade Dresses are used in commerce, non-functional, and inherently distinctive.

51. Upon information and belief, Defendants, without authorization from SB Products, have designed, manufactured, advertised, promoted, distributed, sold, and/or offered for sale, and/or are causing to be designed, manufactured, advertised, promoted, distributed, sold, and/or offered for sale, E-Liquids products which contain a collection of design elements, as displayed on the products' labels, that is confusingly similar, if not identical, to the SB Trade Dresses.

52. The foregoing acts of Defendants are intended to cause, have caused, and are likely to continue to cause confusion, mistake, and deception among consumers, the public, and the trade who recognize and associate the SB Trade Dresses with Suicide Bunny/SB Products. Moreover, Defendants' conduct is likely to cause confusion, to cause mistake, or to deceive consumers, the public, and the trade as to the source of the Infringing Products, or as to a possible affiliation, connection or association between Suicide Bunny/SB Products, the Defendants, and the Infringing Products.

53. Upon information and belief, Defendants have acted with knowledge (or actual notice) of SB Products' ownership of the SB Trade Dresses and with deliberate intention or willful blindness to unfairly benefit from the incalculable goodwill symbolized thereby.

54. Defendants' acts constitute trade dress infringement in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

55. Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

56. Upon information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court.

57. Defendants' acts have damaged and will continue to damage SB Products. Further, SB Products is suffering irreparable injury for which it has no adequate remedy at law.

## COUNT IV
### (False Designation of Origin, etc., 15 U.S.C. § 1125(a))

58. SB Products repeats and realleges the allegations set forth above as if fully set forth herein.

59. Defendants' promotion, advertising, distribution, sale, and/or offering for sale of the Infringing Products in commerce, together with Defendants' use of other indicia associated with Suicide Bunny/SB Products, is intended, and is likely to confuse, mislead, or deceive consumers, the public, and the trade as to the origin, source, sponsorship, or affiliation of the Infringing Products, and is intended, and is likely to cause such parties to believe in error that the Infringing Products have been authorized, sponsored, approved, endorsed or licensed by Suicide Bunny/SB Products, or that Defendants are in some way affiliated with Suicide Bunny/SB Products.

60. The foregoing acts of Defendants constitute false designation of origin, and false and misleading descriptions and representations of fact, all in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

61. Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

62. Upon information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court.

63. Defendants' acts have damaged and will continue to damage SB Products. Further, SB Products is suffering irreparable injury for which it has no adequate remedy at law.

## COUNT V
### (Common Law Trademark Infringement)

64. SB Products repeats and realleges the allegations set forth above as if fully set forth herein.

65. SB Products owns all rights, title, and interest in and to the SB Trademarks, including all common law rights in such marks.

66. Defendants, without authorization from SB Products, have used and are continuing to use in commerce spurious designations that are confusingly similar to or exact copies and/or reproductions and/or counterfeits of the SB Trademarks.

67. The foregoing acts of Defendants are intended to cause, have caused, and are likely to continue to cause confusion, mistake, and deception among consumers, the public, and the trade as to whether Defendants' Infringing Products originate from, or are affiliated with, sponsored by, or endorsed by Suicide Bunny/SB Products.

68. Upon information and belief, Defendants have acted with knowledge of SB Products' ownership of the SB Trademarks and with deliberate intention or willful blindness to unfairly benefit from the incalculable goodwill symbolized thereby.

69. Defendants' acts constitute trademark infringement in violation of the common law of the State of Texas.

70. Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

71. Upon information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court.

72. Defendants' acts have damaged and will continue to damage SB Products. Further, SB Products is suffering irreparable injury for which it has no adequate remedy at law.

73. Upon information and belief, Defendants' acts and conduct as alleged above were committed with malice as defined in Texas Civil Practice and Remedies Code Section 41.001(7) in that Defendants' activities were specifically intended to harm SB Products in its business. Defendants' conduct warrants the assessment of exemplary damages against Defendants under Texas Civil Practice and Remedies Code Section 41.003.

## COUNT VI
### (Common Law Unfair Competition)

74. SB Products repeats and realleges the allegations set forth above as if fully set forth herein.

75. The foregoing acts of Defendants permit Defendants to use and benefit from the goodwill and reputation earned by Suicide Bunny/SB Products and to obtain a ready customer acceptance of Defendants' products, and constitute unfair competition, palming off, and/or misappropriation in violation of Texas common law, for which SB Products is entitled to recover any and all remedies provided by such common law, including without limitation, its actual damages.

76. Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

77. Upon information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court.

78.     Defendants' acts have damaged and will continue to damage SB Products. Further, SB Products is suffering irreparable injury for which it has no adequate remedy at law.

79.     Upon information and belief, Defendants' acts and conduct as alleged above were committed with malice as defined in Texas Civil Practice and Remedies Code Section 41.001(7) in that Defendants' activities were specifically intended to harm SB Products in its business. Defendants' conduct warrants the assessment of exemplary damages against Defendants under Texas Civil Practice and Remedies Code Section 41.003.

## COUNT VII
### (Common Law Unjust Enrichment)

80.     SB Products repeats and realleges the allegations set forth above as if fully set forth herein.

81.     By reason of the foregoing, Defendants have unjustly enriched themselves, and continue to do so, in an unknown amount.

82.     SB Products is entitled to just compensation under the common law of the State of Texas, including without limitation, the recovery of all profits derived by Defendants as a result of their wrongful conduct.

## COUNT VIII (Attorneys' Fees)

83.     SB Products repeats and realleges the allegations set forth above as if fully set forth herein.

84.     SB Products is entitled to an award of attorney fees and costs under 15 U.S.C. § 1117.

## **CONDITIONS PRECEDENT**

85.     All conditions precedent have occurred or have been performed, excused, or waived.  (FED. R. CIV. P. 9(c)).

**PRAYER**

**WHEREFORE,** SB Premium respectfully requests that this Court enter judgment against Defendants, jointly and severally, as follows:

A.   Finding that: (i) Defendants have violated Section 32 of the Lanham Act (15 U.S.C. § 1114) and Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); (ii) Defendants have engaged in trademark infringement and unfair competition under the common law of Texas; and (iii) Defendants have been unjustly enriched in violation of Texas common law.

B.   Granting an injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure and 15 U.S.C. § 1116 permanently enjoining Defendants, their officers, agents, employees, and attorneys, and all those persons or entities in active concert or participation with them from:

   1.   manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling any products which bear the SB Trademarks, the SB Trade Dresses, or any other mark or design element substantially similar or confusing in relation thereto, including, without limitation, the Infringing Products, and engaging in any other activity constituting an infringement of any of SB Premium's rights in the SB Trademarks and/or the SB Trade Dresses; and

   2.   engaging in any other activity constituting unfair competition with SB Premium, or acts and practices that deceive consumers, the public, and/or trade, including without limitation, the use of designations and design elements associated with Suicide Bunny/SB Products and/or Suicide Bunny/SB Premium;

C.   Requiring Defendants to recall from any distributors and retailers and to deliver to SB Premium for destruction or other disposition all remaining inventory of all Infringing Products, including all advertisements, promotional and marketing materials therefore, as well as

17

the means of making the same;

D. Requiring Defendants to file with this Court and serve on SB Premium within thirty days after entry of the injunction a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

E. Directing such other relief as the Court may deem appropriate to prevent consumers, the public, and/or the trade from deriving any erroneous impression that any product at issue in this action that has been manufactured, imported, advertised, marketed, promoted, supplied, distributed, offered for sale, or sold by Defendants, has been authorized by Suicide Bunny/SB Products or Suicide Bunny/SB Premium, or is related in any way with Suicide Bunny/SB Products or Suicide Bunny/SB Premium and/or any of their products;

F. Awarding SB Premium statutory damages of $2,000,000 per counterfeit mark per type of good in accordance with Section 35 of the Lanham Act (15 U.S.C. § 1117) or alternatively, ordering Defendants to account to and pay to SB Premium all profits realized by their wrongful acts and also awarding SB Premium all actual damages, and also directing that such profits or actual damages be trebled, in accordance with Section 35 of the Lanham Act (15 U.S.C. § 1117);

G. Awarding SB Premium actual and punitive damages to which it is entitled under applicable federal and state laws;

H. Awarding SB Premium its costs, attorneys' fees, investigatory fees, and expenses to the full extent provided by Section 35 of the Lanham Act (15 U.S.C. § 1117);

I. Awarding SB Premium pre-judgment interest on any monetary award made part of the judgment against Defendants; and

    J.    Awarding SB Premium such additional and further relief as the Court deems just and proper.

Dated: March 31, 2017                  Respectfully submitted,

                                      **ZIMMERMAN, AXELRAD, MEYER, STERN & WISE, P.C.**

                      By:    ***/s/ Brian W. Zimmerman***
                                Brian W. Zimmerman
                                State Bar No. 00778746
                                bzimmerman@zimmerlaw.com
                                3040 Post Oak Blvd., Suite 1300
                                Houston, Texas 77056-3813
                                (713) 552-1234 Telephone
                                (713) 963-0859 Facsimile

                                **ATTORNEYS FOR PLAINTIFF SB PREMIUM, LLC**