**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS,**
**DALLAS DIVISION**

| | |
|---|---|
| SB PREMIUM, LLC<br>Plaintiff,<br><br>v.<br><br>WOLFPACK WHOLESALE, INC.,<br>WOLFPACK WHOLESALE 2, LLC,<br>VAPEWILD LLC, VAPORIUM LLC<br>DBA SKYLINE VAPOR, ERIC<br>TURNER, KEVIN THURMAN, AND<br>MATTHEW WEINER<br>Defendants. | Civil Action No. 3:17-cv-00931-L |
| WOLFPACK WHOLESALE, INC.,<br>Third Party Plaintiff,<br><br>v.<br><br>SB PRODUCTS, a Texas General<br>Partnership, TIFFANY GRESHAM,<br>LARRY GRESHAM, WHITE LION<br>INVESTMENTS LLC d/b/a TRITON<br>DISTRIBUTION AND TODD WAGES<br>Third Party Defendants. | |

**THIRD PARTY DEFENDANTS' MOTION TO DISMISS CERTAIN CLAIMS IN
WOLFPACK WHOLESALE, INC.'S FIRST AMENDED THIRD PARTY COMPLAINT
AND BRIEF IN SUPPORT**

ZIMMERMAN, AXELRAD, MEYER,
STERN & WISE, P.C.

By:    /s/ Brian W. Zimmerman
        Brian W. Zimmerman
        State Bar No. 00778746
        bzimmerman@zimmerlaw.com
        3040 Post Oak Blvd., Suite 1300
        Houston, Texas  77056-3813
        (713) 552-1234 Telephone
        (713) 212-2750 Facsimile
**ATTORNEYS FOR THIRD PARTY
DEFENDANTS SB PRODUCTS, TIFFANY
GRESHAM, and LARRY GRESHAM**

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. ii

TABLE OF AUTHORITIES............................................................................................iii

I.  SUMMARY OF ARGUMENT ................................................................................ 2

II.  STANDARD OF REVIEW ...................................................................................... 3

    A. Motion to Dismiss Pursuant to Rule 12(b)(6) ............................................ 3

    B. Motion for a More Definite Statement Under Rule 12(e) (In the Alternative)....... 5

III.  ARGUMENT AND AUTHORITIES ...................................................................... 5

    A. Wolfpack's Breach of Contract Claim Fails As it Relies on an Unenforceable Contract ........................................................................................ 6

    B. Wolfpack's Fraud Claim Is An Attempt to Enforce Unenforceable Contracts ... 11

    C. Wolfpack Failed to Plead Fraud with Particularity ................................ 15

    D. Wolfpack's Claim For Fees Against SB Products is Barred Under Texas Law .. 18

    E. Wolfpack's Claim For Fees Against The Greshams Must Be Dismissed............. 20

    F. The Complaint's Vagueness Prevents Movants From Responding...................... 22

IV.  CONCLUSION.....................................................................................................25

CERTIFICATE OF CONFERENCE............................................................................26

CERTIFICATE OF SERVICE......................................................................................27

## TABLE OF AUTHORITIES

**Cases**

*Ali v. Flessner Enterprises, Inc.*, Civ. A. 13-15-00095-CV, 2015 WL 5797633 (Tex. App. – Corpus Christi Oct. 1, 2015, no pet.) ........................... 7

*Alta Mesa Holdings, L.P. v. Ives*, 488 S.W.3d 438 (Tex. App. – Houston [14th Dist.] 2016, pet. denied) ........................... 19

*Am. Star Energy & Minerals Corp. v. Stowers*, 457 S.W.3d 427 (Tex. 2015), *reh'g denied* (May 1, 2015) ........................... 21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................... 4

*Baker v. Putnal,* 75 F.3d 190 (5th Cir. 1996) ........................... 4

*Beanal v. Freeport–McMoran, Inc.,* 197 F.3d 161 (5th Cir. 1999) ........................... 15

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................... 3, 4

*Blackburn v. City of Marshall*, 42 F.3d 925 (5th Cir. 1995) ........................... 4

*Bohatch v. Butler & Binion,* 977 S.W.2d 543 (Tex. 1998) ........................... 19

*Choi v. McKenzie,* 975 S.W.2d 740 (Tex. App. – Corpus Christi 1998, pet. denied) ........................... 15

*Choice! Power, L.P. v. Feeley*, Civ. A. 01–15–00821–CV, 2016 WL 4151041 (Tex. App. – Houston [1st Dist.] Aug. 4, 2016, no pet.) ........................... 19

*Coburn Supply Co. v. Kohler Co.*, 342 F.3d 372 (5th Cir. 2003) ........................... 8, 12

*Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496 (5th Cir. 2000) ........................... 4

*Conceal City, LLC v. Looper Law Enforcement, LLC*, 917 F. Supp. 2d 611 (N.D. Tex. 2013) .... 5

*Conley v. Gibson*, 355 U.S. 41 (1957) ........................... 3

*Cont'l Casing Corp. v. Siderca Corp.,* 38 S.W.3d 782 (Tex. App. – Houston [14th Dist.] 2001, no pet.) ........................... 6, 7, 8, 9

*Cyrak v. Lemon,* 919 F.2d 320 (5th Cir. 1990) ........................... 15

*E. Hill Marine, Inc. v. Rinker Boat Co.,* 229 S.W.3d 813 (Tex. App. – Fort Worth 2007, pet. denied) ........................... 7

*Epps v. Fowler*, 351 S.W.3d 862 (Tex. 2011) ........................... 19

*Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573 (Tex. 2001) ........................... 16

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200 (5th Cir. 2009) 16

*Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.,* 994 S.W.2d 830 (Tex. App. – Houston [1st Dist.] 1999, no pet.) ........................... 15

*Fleming & Assocs., L.L.P. v. Barton*, 425 S.W.3d 560 (Tex. App. – Houston [14th Dist.] 2014, pet. denied) ........................... 19, 20

*Fourticq v. Fireman's Fund Ins. Co.*, 679 S.W.2d 562 (Tex. App. – Dallas 1984, no writ) ........................... 11

*Ganz v. Lyons P'ship, L.P.*, 173 F.R.D. 173 (N.D. Tex. 1997) ........................... 19

*Gold Kist, Inc. v. Carr*, 886 S.W.2d 425 (Tex. App. – Eastland 1994, writ denied) ........................... 13, 14

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305 (5th Cir. 2002) ........................... 5

*Greco v. Nat'l Football League*, 116 F. Supp. 3d 744 (N.D. Tex. 2015) ........................... 19

*Green v. JPMorgan Chase Bank, N.A.*, Civ. A. 3:11-CV-1498-N, 2012 WL 12823700 (N.D. Tex. Aug. 30, 2012) ........................... 18

*Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99 (1945) ...................................................... 20

*Haase v. Glazner*, 62 S.W.3d 795 (Tex. 2001)........................................................... 11

*Heritage Constructors, Inc. v. Chrietzberg Elec., Inc.*, Civ. A. 06-14-00048-CV, 2015 WL
3378377 (Tex. App. – Texarkana Mar. 4, 2015, no pet.)......................................... 22

*Hoffman v. L & M Arts*, Civ. A. 3:10-CV-0953-D, 2015 WL 1000838 (N.D. Tex. Mar. 6, 2015),
*aff'd,* 838 F.3d 568 (5th Cir. 2016) ....................................................................... 20

*Hugh Symons Group, plc v. Motorola, Inc.*, 292 F.3d 466 (5th Cir. 2002) ................................. 11

*Humana, Inc.-Louisville v. Eyecare Network, Inc.*, Civ. A. 05-98-01269-CV, 2001 WL 840782
(Tex. App. – Dallas July 26, 2001, no writ)........................................................... 14

*Jeanmarie v. United States,* 242 F.3d 600 (5th Cir. 2001) ............................................ 4

*Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617 (Tex. 1986).......................................... 14

*Johnson v. McLeaish*, Civ. A. 05-94-01673-CV, 1995 WL 500308 (Tex. App. – Dallas Aug. 23,
1995, writ denied) ........................................................................................ 14

*Joseph Paul Corp. v. Trademark Custom Homes, Inc.*, Civ. A. 3:16-CV-1651, 2016 WL
4944370 (N.D. Tex. Sept. 16, 2016) .................................................................. 4, 5

*Keriotis v. Lombardo Rental Trust*, 607 S.W.2d 44  (Tex. Civ. App. – Beaumont 1980, writ ref'd
n.r.e.) ....................................................................................................... 13

*Malone v. E.I. du Pont de Nemours & Co.*, 8 S.W.3d 710 (Tex. App. – Fort Worth 1999, pet.
denied)....................................................................................................... 15

*Marshall v. Fulton*, Civ. A. 3:08-CV-1921, 2011 WL 1630661 (N.D. Tex. Apr. 29, 2011) ........ 4

*Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464 (5th Cir. 2004).............. 4

*Mitchell v. E-Z Way Towers*, Inc., 269 F.2d 126 (5th Cir. 1959) ................................... 5

*Navistar Int'l Trans. Corp. v. Crim Truck & Tractor Co.,* 791 S.W.2d 241 (Tex. App. –
Texarkana 1990), *aff'd,* 823 S.W.2d 591 (Tex. 1992).............................................. 13

*Phillips v. ABB Combustion Eng'g, Inc.*, Civ. A. 13-594, 2012 WL 3155224 (E.D. La. June 19,
2013)......................................................................................................... 5

*Priority Assist, Inc. v. Stockard & Assocs., Inc.*, Civ. A. 4:15-CV-02970, 2016 WL 4479529
(S.D. Tex. Aug. 24, 2016)............................................................................... 5, 25

*R2 Invs. LDC v. Phillips*, 401 F.3d 638 (5th Cir. 2005) ............................................ 5

*Ralston Purina Company v. McKendrick,* 850 S.W.2d 629 (Tex. App. – San Antonio 1993, writ
denied)....................................................................................................... 16

*Rice v. Omnitrition Int'l, Inc.*, Civ. A. 05-98-01634-CV, 2001 WL 717853 (Tex. App. – Dallas
June 27, 2001, no pet.) ................................................................................ 12, 13

*Siragusa v. Arnold*, Civ. A. 3:12-cv-04497, 2013 WL 5462286 (N.D. Tex. Sept. 16, 2013) ...... 16

*Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673 (5th Cir. 2007)................................. 4

*Spivey v. Robertson,* 197 F.3d 772 (5th Cir. 1999), *cert. denied,* 530 U.S. 1229 (2000) .............. 4

*Tarrant County Hosp. Dist. v. GE Automation Serv., Inc.,* 156 S.W.3d 885 (Tex. App. – Fort
Worth 2005, no pet.) ..................................................................................... 7

*Teague v. Norcold, Inc.*, 774 F. Supp. 2d 817 (N.D. Tex. 2011)................................... 14

*Traxxas, L.P. v. Dewitt*, Civ. A. 4:14CV733, 2015 WL 7777986 (E.D. Tex. Dec. 2, 2015) ....... 20

*Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061 (5th Cir. 1994) ................................................ 15

*United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.,* 414 F.3d 558 (5th Cir. 2005)..... 16

*Viajes Gerpa, S.A. v. Fazeli*, Civ. A. 14-15-00608-CV, 2016 WL 7478352 (Tex. App. – Houston [14th Dist.] Dec. 29, 2016, pet. filed) ..................................................................... 6

*Wade v. State National Bank*, 379 S.W.2d 717 (Tex. Civ. App. – El Paso 1964, writ ref'd n.r.e.) ........................................................................................................................................ 14

*West v. Triple B Servs., LLP*, 264 S.W.3d 440 (Tex. App. – Houston [14th Dist.] 2008, no pet.)  6

*WesTech Eng'g, Inc. v. Clearwater Constructors, Inc.,* 835 S.W.2d 190 (Tex. App. – Austin 1992, no writ) ................................................................................................................... 7

*Westlake Petrochemicals, L.L.C. v. United Polychem, Inc.*, 688 F.3d 232 (5th Cir. 2012), *rev'd* (Aug. 7, 2012).......................................................................................... 10, 11

*White v. BAC Home Loans Servicing, LP*, Civ. A. 3:09-cv-2484, 2010 WL 4352711 (N.D. Tex. Nov. 2, 2010).................................................................................................................. 16

*Williams v. WMX Tech., Inc.*, 112 F.3d 175 (5th Cir. 1997) ........................................... 15, 16, 18

## Statutes

Civ. Prac. & Rem. Code § 38.001 ................................................................................. 3, 19, 20, 22

Civ. Prac. & Rem. Code § 38.001(8) ....................................................................................... 19, 21

Tex. Bus. & Comm. Code § 2.105(a).............................................................................................. 7

Tex. Bus. & Comm. Code § 2.106(a).............................................................................................. 7

Tex. Bus. & Comm. Code § 2.201(a)................................................................................. 6, 7, 9, 12

Tex. Bus. Orgs. Code § 152.101 ................................................................................................... 21

Tex. Bus. Orgs. Code § 152.304 ................................................................................................... 21

## Rules

Fed. R. Civ. P. 12(b)(6) ....................................................................................................... passim

Fed. R. Civ. P. 12(e) ................................................................................................... 2, 5, 22

Fed. R. Civ. P. 8 .............................................................................................................. 4, 5

Fed. R. Civ. P. 8(a)(2)................................................................................................................ 3

Fed. R. Civ. P. 9(b) ................................................................................................................ 15

Tex. R. Civ. P. 28.................................................................................................................. 21

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS,**
**DALLAS DIVISION**

| | |
|---|---|
| **SB PREMIUM, LLC**<br>**Plaintiff,** | |
| **v.** | **Civil Action No. 3:17-cv-00931-L** |
| **WOLFPACK WHOLESALE, INC.,**<br>**WOLFPACK WHOLESALE 2, LLC,**<br>**VAPEWILD LLC, VAPORIUM LLC**<br>**DBA SKYLINE VAPOR, ERIC**<br>**TURNER, KEVIN THURMAN, AND**<br>**MATTHEW WEINER** | |
| **Defendants.** | |
| **WOLFPACK WHOLESALE, INC.,**<br>**Third Party Plaintiff,** | |
| **v.** | |
| **SB PRODUCTS, a Texas General**<br>**Partnership, TIFFANY GRESHAM,**<br>**LARRY GRESHAM, WHITE LION**<br>**INVESTMENTS LLC d/b/a TRITON**<br>**DISTRIBUTION AND TODD WAGES** | |
| **Third Party Defendants.** | |

**THIRD PARTY DEFENDANTS' MOTION TO DISMISS CERTAIN CLAIMS**
**IN WOLFPACK WHOLESALE, INC.'S FIRST AMENDED THIRD PARTY**
**COMPLAINT AND BRIEF IN SUPPORT**

Third Party Defendants SB Products ("SB Products"), Tiffany Gresham, and Larry

Gresham (the "Greshams") (collectively, the "Third Party Defendants" or "Movants") file this

their Motion to Dismiss (the "Motion") Certain Claims in the First Amended Third Party

Complaint filed by Third Party Plaintiff Wolfpack Wholesale, Inc. (Dkt. # 50) ("Wolfpack" or "Third Party Plaintiff") because Wolfpack has failed to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). Alternatively, the Movants request that this Court issue an order requiring Wolfpack to replead pursuant to FED. R. CIV. P. 12(e) due to pleading deficiencies contained in the First Amended Third Party Complaint. This Motion addresses all claims for affirmative relief alleged against the Third Party Defendants in Wolfpack's First Amended Third Party Complaint. In support of this Motion, the Third Party Defendants respectfully show as follows:

# I.
## SUMMARY OF ARGUMENT

1.      Wolfpack's First Amended Third Party Complaint (the "Complaint") does not correct the pleading deficiencies contained in its Original Third Party Complaint. Therefore, Wolfpack has again failed to properly plead a claim upon which relief can be granted. Wolfpack's allegations do not contain facts which are sufficient to state a claim that is plausible on its face. Nor do the factual allegations made by Wolfpack support the claims made against the Third Party Defendants. The deficiencies of the Complaint are summarized as follows:

- Wolfpack fails to allege facts to support the existence and enforceability of the Exclusive Distribution Agreement which forms the basis of its breach of contract action against the Third Party Defendants. Dkt. # 50 at ¶¶ 8-33. Wolfpack attached an unexecuted document as Exhibit B claiming it "is a valid and enforceable contract under Texas law" despite the unexecuted agreement violating the statute of frauds. *Id.* at ¶ 10. In support of this allegation, Wolfpack makes misleading statements that Exhibit C shows that "SB Partnership represented to Wolfpack that it accepted and would sign that contract" when, in reality, Exhibit C makes no such representations. *Id.* at ¶ 11; 30. As the contract Wolfpack relies upon for its breach of contract claim violates the statue of frauds, the alleged contract is unenforceable and Wolfpack's breach of contract claim must be dismissed.

- Wolfpack fails to plead fraud with particularity. *Id.* at ¶¶ 8-30; 34-36. Wolfpack fails to properly allege what allegedly fraudulent misrepresentations

were made or what facts were omitted. Wolfpack also fails to name with specificity which person or entity allegedly made the misrepresentations or withheld facts or when such actions occurred and instead makes a blanket assertion that all Third Party Defendants made such alleged misrepresentations. Additionally, Wolfpack fails to plead the basis for any alleged duty to disclose owed to Wolfpack by the Third Party Defendants. Wolfpack likewise again fails to plead any facts relating to any alleged intent to deceive or any facts related to malice.

- Wolfpack's fraud claim is also nothing more than a repackaged claim for breach of contract of the unenforceable Exclusive Distribution Agreement that is not permitted under Texas law. *Id.* at ¶ 11. Additionally, Wolfpack pleads an unenforceable oral contract claim as a fraud claim to skirt the requirements of the statute of frauds. *Id.* at ¶¶ 17-18. Texas law prohibits Wolfpack from recasting its contract claim as one sounding in tort.

- The Complaint seeks fees against the Third Party Defendants under Texas Civil Practice and Remedies Code § 38.001. *Id.* at ¶ 41. However, Texas law bars Wolfpack from obtaining fees against SB Products, a partnership, under that statute. Likewise, Wolfpack is barred from recovering fees against the Greshams individually as no liability falls on them as general partners when SB Products, the partnership, can never be found liable under section 38.001 and no contract exists between the Greshams, individually, and Wolfpack.

- Wolfpack's Complaint fails to articulate its claims and instead uses vague allegations that prevent the Third Party Defendants from responding.

2.      Under well-settled precedent, Wolfpack's claims against the Third Party Defendants are not sufficiently pled and should be dismissed. Alternatively, Wolfpack should be ordered to replead to correct all of the deficiencies identified in this Motion.

## II.
## STANDARD OF REVIEW

### A.      Motion to Dismiss Pursuant to Rule 12(b)(6)

3.      "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

However, while Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than . . . 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 555). A party's claim is not proper under the rules if the complaint "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 555 U.S. at 557). In deciding if the complaint yields "further factual enhancement", courts in the Fifth Circuit "may not rely upon conclusional allegations or legal conclusions that are disguised as factual allegations." *Jeanmarie v. United States,* 242 F.3d 600, 602–03 (5th Cir. 2001) (citing *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)).

4.       "In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff." *Marshall v. Fulton*, Civ. A. 3:08-CV-1921-L, 2011 WL 1630661, at *3 (N.D. Tex. Apr. 29, 2011) (Lindsay, J.) (citing *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996)). However, the court "cannot look beyond the pleadings" which "include the complaint and any documents attached to it." *Id.* at *3 (citing *Sonnier*, 509 F.3d at 675; *Spivey v. Robertson,* 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied,* 530 U.S. 1229 (2000); *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498–99 (5th Cir. 2000).

5.       The "ultimate question" before the court "in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff." *Joseph Paul Corp. v. Trademark Custom Homes, Inc.*, Civ. A. 3:16-CV-1651-L, 2016 WL 4944370, at *6 (N.D. Tex. Sept. 16, 2016) (Lindsay, J.) (citing *Great Plains Tr. Co. v. Morgan*

*Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002)). The court must arrive at this determination without "strain[ing] to find inferences favorable to the plaintiff" or "accept[ing] conclusory allegations, unwarranted deductions, or legal conclusions." *Id.* at *6 (citing *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005)). Wolfpack has failed to meet its pleading burden under Rule 8 as it relies on conclusory statements or supplies no facts at all to support its claims. The Court should therefore dismiss the claims made in the Complaint against the Third Party Defendants with prejudice pursuant to Rule 12(b)(6).

**B.    Motion for a More Definite Statement Under Rule 12(e) (In the Alternative)**

6.      "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). A court should grant the motion when the complaint is "so excessively vague and ambiguous to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *Priority Assist, Inc. v. Stockard & Assocs., Inc.*, Civ. A. 4:15-CV-02970, 2016 WL 4479529, at *2 (S.D. Tex. Aug. 24, 2016) (citing *Mitchell v. E-Z Way Towers*, Inc., 269 F.2d 126, 132 (5th Cir. 1959); *Conceal City, LLC v. Looper Law Enforcement, LLC*, 917 F. Supp. 2d 611, 621 (N.D. Tex. 2013); quoting *Phillips v. ABB Combustion Eng'g, Inc.*, Civ. A. 13-594, 2012 WL 3155224, at *2 (E.D. La. June 19, 2013)). The Complaint's ambiguity prevents the Third Party Defendants from responding as the allegations are so unclear and indefinite that no proper response can be filed with the Court. The Court should therefore order Wolfpack to replead and correct its Complaint should the Court not dismiss the claims in their entirety.

**III.**
**ARGUMENT AND AUTHORITIES**

**A.    Wolfpack's Breach of Contract Claim Fails As it Relies on an Unenforceable**

**Contract**

7.      Wolfpack's Complaint contains a claim for "Breach of Exclusive Distribution Agreement" which is nothing more than a simple breach of contract action based upon the unsigned Exclusive Distribution Agreement attached to the Complaint as Exhibit "B." Dkt. # 50 at ¶ 10; 19. "To prevail on a breach-of-contract claim, a party must establish the following elements: (1) a valid contract existed between the plaintiff and the defendant, (2) the plaintiff tendered performance or was excused from doing so, (3) the defendant breached the terms of the contract, and (4) the plaintiff sustained damages as a result of the defendant's breach." *Viajes Gerpa, S.A. v. Fazeli*, Civ. A. 14-15-00608-CV, 2016 WL 7478352, at *12 (Tex. App. – Houston [14th Dist.] Dec. 29, 2016, pet. filed) (citing *West v. Triple B Servs., LLP*, 264 S.W.3d 440, 446 (Tex. App. – Houston [14th Dist.] 2008, no pet.)). The Court should dismiss Wolfpack's breach of contract claim because Wolfpack has failed (1) to plead or show the existence of an enforceable contract such that (2) no breach can ever occur.

8.      In Texas, the statute of frauds states that "a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought[.]" TEX. BUS. & COMM. CODE § 2.201(a). As demonstrated below, the essence of the unsigned Exclusive Distribution Agreement sounds in the sale of goods, specifically the sale of "certain products marketed under the Suicide Bunny Premium E-Juice brand." Dkt. # 50 at 19.

9.      To determine whether the statute of frauds applies, the Court must determine if the alleged agreement was a contract for the sale of goods or for services. *See Cont'l Casing Corp. v. Siderca Corp.*, 38 S.W.3d 782, 787 (Tex. App. – Houston [14th Dist.] 2001, no pet.).

"Where a contract contains a mix of goods and services, the UCC applies if the sale of goods is the 'dominant factor' or 'essence' of the transaction." *Ali v. Flessner Enterprises, Inc.*, Civ. A. 13-15-00095-CV, 2015 WL 5797633, at *5 (Tex. App. – Corpus Christi Oct. 1, 2015, no pet.) (citing *Tarrant County Hosp. Dist. v. GE Automation Serv., Inc.,* 156 S.W.3d 885, 893 (Tex. App. – Fort Worth 2005, no pet.); *Cont'l Casing,* 38 S.W.3d at 787; *WesTech Eng'g, Inc. v. Clearwater Constructors, Inc.,* 835 S.W.2d 190, 197 (Tex. App. – Austin 1992, no writ)). Thus, the Court must "decide whether the dominant factor or essence of the agreement is a 'contract for the sale of goods.'" *Id.* at *5 (quoting *E. Hill Marine, Inc. v. Rinker Boat Co.,* 229 S.W.3d 813, 819 (Tex. App. – Fort Worth 2007, pet. denied)).

10.     In reaching its decision, the Court should look to the UCC for interpretation of the alleged contract. The UCC defines goods as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale...." TEX. BUS. & COMM. CODE § 2.105(a). "A 'sale' consists in the passing of title from the seller to the buyer for a price[.]" TEX. BUS. & COMM. CODE § 2.106(a). The UCC defines a "contract for sale" as including "both a present sale of goods and a contract to sell goods at a future time." *Id.* A review of the unsigned Exclusive Distribution Agreement demonstrates that it is undoubtedly an alleged "contract for the sale of goods" that requires the application of, and compliance with, the statute of frauds to be valid and enforceable. TEX. BUS. & COMM. CODE § 2.201(a).

11.     Although the unsigned Exclusive Distribution Agreement briefly references marketing – a service – the contract's essence sounds in the sale of goods. *See* Dkt. # 50 at 19 ¶1.3. The Exclusive Distribution Agreement is an unsigned contract requiring SB Products to sell and Wolfpack to buy "certain products marketed under the Suicide Bunny Premium E-Juice brand (the "***Products***")[.]" *Id.* at 19 (emphasis in original). The unsigned Exclusive Distribution

Agreement confirms this relationship, stating that the parties see each other solely as "buyer and seller." *Id.* at 19 ¶ 1.4.

12.     The unsigned Exclusive Distribution Agreement further states that "title to a Product shall pass to [Wolfpack] at the time and place the Product is delivered at its destination . . . and that all risk and responsibility thereafter shall be in [Wolfpack]." *Id.* at 20 ¶ 3.1. Wolfpack is required to "purchase an amount of Product not less than the equivalent of $30,000 per month of Product at 30ml per bottle" and may order a lesser amount "only with the prior written consent of [SB Products]." *Id.* at 20 ¶ 3.2(a). Based on the document's language, the Court should find the unsigned Exclusive Distribution Agreement is a "contract for the sale of goods" that is required to satisfy the statute of frauds to be enforceable against SB Products.

13.     For further support that the unsigned Exclusive Distribution Agreement is a contract for the sale of goods, the Court need only look to Texas precedent. In Texas, distribution agreements, such as the unsigned agreement at issue here, are considered contracts for the sale of goods under the UCC. *See, e.g., Cont'l Casing Corp.*, 38 S.W.3d at 788 (following "the overwhelming majority of jurisdictions that have . . . concluded that distributorship agreements are subject to the UCC."). The Fifth Circuit has likewise recognized that "[i]n Texas, distributorship agreements are generally controlled by the UCC." *Coburn Supply Co. v. Kohler Co.*, 342 F.3d 372, 375 (5th Cir. 2003). Thus, the Court should conclude that the unsigned Exclusive Distribution Agreement is one for the sale of goods that must meet the requirements of the UCC.

14.     Breach of contract claims that rely on contracts violative of the statute of frauds are "unenforceable as a matter of law." *Cont'l Casing Corp.*, 38 S.W.3d at 787. None of the Third Party Defendants signed or agreed to the alleged Exclusive Distribution Agreement

attached to Wolfpack's Complaint. *See* Dkt. # 50 at 27. Without being signed, the Exclusive

Distribution Agreement is unenforceable. TEX. BUS. & COMM. CODE § 2.201(a); *Cont'l Casing*

*Corp.*, 38 S.W.3d at 787. Thus, Wolfpack has not and cannot allege the first element of a breach

of contract action – an enforceable contract.

15.     Wolfpack's Complaint alleges that the alleged Exclusive Distribution Agreement

was "accepted . . . through a series of emails." Dkt. # 50 at ¶11. Specifically, the Complaint

alleges the email contained in Exhibit C shows that "SB Partnership represented to Wolfpack

that it accepted and would sign [the alleged Exclusive Distribution Agreement] and gave

Wolfpack written confirmation of its acceptance of the [alleged Exclusive Distribution

Agreement.]" *Id.* However, Exhibit C does not support the allegations made in the Complaint

and, in fact, further proves that the alleged Exclusive Distribution Agreement was never agreed

upon and remains violative of the statute of frauds. *See id.* at 30.

16.     The e-mail Wolfpack relies upon does not show or allege that the alleged

Exclusive Distribution Agreement was agreed to and, in fact, shows continuing negotiations and

nothing more. *Id.* at 30. On April 18, 2014, Eric Turner wrote to "Pip," the moniker for Tiffany

Gresham, stating:

> I have worked up a revision of the previous contract. I changed the terms to net 10
> as well as upped the minimum to 30k bottles. I have also made it a contract in
> force until one of us decides to terminate it. **Please let me know what, if any,**
> **changes you would like to have made**.

*Id.* (Emphasis added). This email, which occurred almost a month before the effective date stated

in the alleged Exclusive Distribution Agreement, seeks a response from SB products as to the

language contained in the alleged Exclusive Distribution Agreement. *Id.* The email also fails to

show any indication that "a copy of the [alleged] Exclusive Distribution Agreement was sent to

SB Partnership[.]" Dkt. # 50 at ¶ 11. Nor does the exhibit include the alleged "revision of the

previous contract." *Id.* at 30. Additionally, Exhibit C does not identify the "previous contract" such that the email can offer no implication as to being in anyway related to the alleged Exclusive Distribution Agreement. With no reference to the alleged Exclusive Distribution Agreement, in addition to the other reasons stated above, the email cannot support Wolfpack's allegation that the alleged Exclusive Distribution Agreement was accepted by SB Products.

17.     Likewise, the response from SB Products, included in Exhibit C, does not make any statement showing agreement with the unsigned Exclusive Distribution Agreement. *Id.* SB Products' answer to Wolfpack can only be read as a continuation of negotiations to change some unknown "previous contract": "It looks like this is fine for us. **I will read it through today**. I'm sorry I didn't get to it this weekend. It was a busy one." *Id.* (Emphasis added). SB Products did not agree to the unknown and unpled "revision to the previous contract," but, instead, stated only that it would review the attachment. Nothing in SB Products' email implies acceptance of the alleged Exclusive Distribution Agreement as alleged by Wolfpack.

18.     While it is true that an exchange of emails, letters, or writings between parties may constitute a contract that fulfills all the requirements of the statute of frauds, the email chain relied upon by Wolfpack does not. *See, e.g., Westlake Petrochemicals, L.L.C. v. United Polychem, Inc.*, 688 F.3d 232, 241 (5th Cir. 2012), *rev'd* (Aug. 7, 2012). In *Westlake*, the Fifth Circuit found that a set of written confirmations sent by instant message and email confirming an agreement satisfied the statute of frauds. *Id.* at 241. However, those "confirmations included the essential quantity provision (5 million pounds per month), as well as the price ($0.54 per pound), the product (ethylene), and the delivery terms (monthly during the 2009 calendar year, delivered via pipeline to Mont Belvieu–Williams)." *Id.* The confirmations in *Westlake* contained all the pertinent information required for a contract for the sale of goods under the UCC. *See id.*

19.     Unlike the confirmations in *Westlake*, the emails relied upon by Wolfpack do not state any of the terms of the alleged Exclusive Distribution Agreement. *Compare id. with* Dkt. # 50 at 30. Reading the emails contained in Exhibit C in full, "the email [by SB Products] does not confirm any such agreement." *Hugh Symons Group, plc v. Motorola, Inc.*, 292 F.3d 466, 470 (5th Cir. 2002). In fact, "[t]here is no language expressing or contemplating a final agreement or settling on terms; it is an overture to further joint discussion or ongoing negotiations, not a binding agreement." *Id.* at 470 (citing *Haase v. Glazner*, 62 S.W.3d 795, 797 (Tex. 2001)). Simply put, the email does not show SB Products' acceptance of the unenforceable Exclusive Distribution Agreement.

20.     As it is impossible for a party to breach an unenforceable contract, no court could ever hold the Third Party Defendants liable for breach of the contract which Wolfpack relies upon for its claim. *See Fourticq v. Fireman's Fund Ins. Co.*, 679 S.W.2d 562, 563 (Tex. App. – Dallas 1984, no writ) ("... there could be no breach because the contract was unenforceable. We agree."). Wolfpack's breach of contract claim must therefore be dismissed with prejudice because the claim not only fails as a matter of law, but the Complaint fails to properly allege any basis for this Court to rule contrary to established Texas and Fifth Circuit precedent.

**B.     Wolfpack's Fraud Claim Is An Attempt to Enforce Unenforceable Contracts**

21.     Wolfpack's fraud claim should also be dismissed as being nothing more than a recasting of a breach of contract claim. The fraud claim relies upon and seeks damages allegedly incurred relating to or arising out of the unsigned Exclusive Distribution Agreement or a never-before-pled, unenforceable, oral agreement. Dkt. # 50 at ¶¶ 35, 17-18. However, as shown above, the unsigned Exclusive Distribution Agreement is unenforceable because it violates the statute of frauds. *Supra* at II. A. Likewise, Wolfpack's Complaint for the first time alleges an oral

agreement concerning a warehouse in Ireland that is also unenforceable for violating the statute of frauds. Dkt. # 50 at ¶ 17.

22.     In its new Complaint, Wolfpack alleges an "agreement" existed whereby Wolfpack would "fund the up-front costs" . . . "of establishing a warehouse facility in Ireland" if SB Products "would provide discounted prices to Wolfpack and … the [Third Party Defendants] would commit to a long term arrangement for Wolfpack to be the exclusive distributor of SB Partnership products in Europe[.]" *Id.* This newly-alleged oral agreement (the "Ireland Agreement") is nothing more than a distribution agreement that is "controlled by the UCC." *Coburn Supply Co.,* 342 F.3d at 375. As it is covered by the UCC, the alleged Ireland Agreement must therefore satisfy all of the requirements of the statute of frauds including the requirement that it be in some form of "writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought[.]" TEX. BUS. & COMM. CODE § 2.201(a). Wolfpack has alleged no facts to show that the alleged Ireland Agreement satisfies the statute of frauds and, therefore, it is unenforceable as a matter of law.

23.     "The gist of [Wolfpack's] fraud claim is the breach of the unenforceable agreement[s]. [Wolfpack's] fraud claim is barred because it is nothing more than a re-packaged breach of contract claim." *Rice v. Omnitrition Int'l, Inc.*, Civ. A. 05-98-01634-CV, 2001 WL 717853, at *5 (Tex. App. – Dallas June 27, 2001, no pet.); *see* Dkt. # 50 at ¶ 17 (Wolfpack alleges its fraud claim is based on an alleged oral "agreement."). "When a defendant's representations concern specific terms of a contract, such as [Wolfpack's] contention that" it "purchase[d] large amount of SB Partnership['s] products . . . while [SB Partners] secretly conspir[ed] . . . to terminate the Exclusive Distribution Agreement" and "incur[red] substantial investment costs in connection with … establishing a warehouse distribution facility in Ireland"

the claim is for "a breach of contract and not a tort." *Rice,* 2001 WL 717853 at \*5 (citing

*Navistar Int'l Trans. Corp. v. Crim Truck & Tractor Co.,* 791 S.W.2d 241, 245 (Tex. App. –

Texarkana 1990), *aff'd,* 823 S.W.2d 591 (Tex. 1992)); Dkt. #50 at ¶ 35. Texas law precludes

parties from recovering tort damages for what is essentially a breach of contract cause of action.

*See Navistar Int'l Trans. Corp.,* 791 S.W.2d at 245.

24.     Additionally, Texas precedent prohibits claims for fraud based on unenforceable

contracts. *Gold Kist, Inc. v. Carr*, 886 S.W.2d 425 (Tex. App. – Eastland 1994, writ denied). In

*Gold Kist*, Carr was allegedly promised the "exclusive right to haul peanuts for Gold Kist in

Texas." *Gold Kist, Inc.*, 886 S.W.2d at 428. However, when the parties finalized the contract on

paper, the writing stated that Carr would purchase trucks from Gold Kist under a five-year

promissory note, but that "Gold Kist . . . may, but shall be under no obligation to, engage [Carr]

to haul commodities on its behalf." *Id.* at 429. All parties signed the contract. *Id.* Carr later sued

seeking to enforce the oral "promise of exclusive hauling rights" and claimed fraud on behalf of

Gold Kist. *Id.* at 428, 431-32. The lower court found in favor of Carr and Gold Kist appealed. *Id.*

at 428, 431-32.

25.     On appeal, the Eleventh Court of Appeals reversed the trial court's judgment and

rendered judgment in favor of Gold Kist. *Id.* at 431-32. In doing so, the court found that the

alleged oral agreement violated the statute of frauds because it was a service contract that could

not be performed in under a year and was thus unenforceable. *Id.* at 430. The court, in ruling

against Carr, agreed with the conclusion reached by other Texas courts:

> We fail to see how there could be any recovery for fraud involving the breach of
> an unenforceable contract. To hold otherwise would be to create an anomaly, and
> allow one to do indirectly what he could not by law do directly.

*Id.* at 432 (citing *Keriotis v. Lombardo Rental Trust*, 607 S.W.2d 44, 46 (Tex. Civ. App. –

Beaumont 1980, writ ref'd n.r.e.); *Wade v. State National Bank*, 379 S.W.2d 717, 720 (Tex. Civ.

App. – El Paso 1964, writ ref'd n.r.e.)). The court also stated that "it is not only the nature of

damages sought but also the relationship of the promise to the purposes of the statute of frauds

which controls the application of the statute." *Id.*   Thus, "there can be no recovery for a fraud

which is founded upon the breach of an unenforceable promise." *Humana, Inc.-Louisville v.*

*Eyecare Network, Inc.*, Civ. A. 05-98-01269-CV, 2001 WL 840782, at *6 (Tex. App. – Dallas

July 26, 2001, no writ); *see also Johnson v. McLeaish*, Civ. A. 05-94-01673-CV, 1995 WL

500308, at *9 (Tex. App. – Dallas Aug. 23, 1995, writ denied).

26.     "The gist of [Wolfpack's] cause of action is the breach of the unenforceable

promise." *Gold Kist, Inc.,* 886 S.W.2d at 432. Wolfpack claims it incurred losses in connection

with expanding its business, buying additional inventory, and from the termination of the

unsigned Exclusive Distribution Agreement as well as from establishing a warehouse in Ireland

based upon the unenforceable Ireland Agreement. *See* Dkt. # 50 at ¶ 35. Each of these alleged

losses is reliant on unenforceable alleged contracts. Texas law prohibits Wolfpack from

repackaging its breach of contract damages as tort damages. Likewise, because the damages

sought by Wolfpack are economic losses, Texas law forbids Wolfpack's fraud claim from being

pursued. *Teague v. Norcold, Inc.*, 774 F. Supp. 2d 817, 820 (N.D. Tex. 2011) (citing *Jim Walter*

*Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex. 1986)) ("a party must rely on contract remedies

when the injury alleged is the economic loss to the subject of a contract itself.").

27.     Based on the foregoing, the Court should dismiss Wolfpack's fraud claims with

prejudice because they are based on the unenforceable Exclusive Distribution Agreement and the

unenforceable Ireland Agreement. Simply put, Wolfpack is forbidden by Texas law from

"circumvent[ing] the statute of frauds by renaming [its] contract claim as one sounding in tort

law." *Malone v. E.I. du Pont de Nemours & Co.*, 8 S.W.3d 710, 716 (Tex. App. – Fort Worth 1999, pet. denied) (citing *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.,* 994 S.W.2d 830, 837 (Tex. App. – Houston [1st Dist.] 1999, no pet.); *Choi v. McKenzie,* 975 S.W.2d 740, 744–45 (Tex. App. – Corpus Christi 1998, pet. denied)). For this reason, the Court should grant this Motion and dismiss Wolfpack's fraud claims against the Third Party Defendants with prejudice.

## C.    Wolfpack Failed to Plead Fraud with Particularity

28.    Wolfpack's claim of fraud against the Third Party Defendants must also be dismissed for failure to plead with "particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). Courts in the Fifth Circuit require a party claiming fraud to plead the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (alteration in original) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)). The Complaint must essentially state "the who, what, when, where, and how" of the alleged fraud. *Id.* at 178. The party claiming fraud must meet this burden in their pleadings "*before* access to the discovery process is granted." *Id.* (emphasis added). "[A] complaint, which contains a bare bones allegation that a wrong occurred and which does not plead any of the facts giving rise to the injury, does not provide adequate notice" and should be dismissed. *Beanal v. Freeport–McMoran, Inc.,* 197 F.3d 161, 164 (5th Cir. 1999).

29.    "The elements of fraud include: 1) a misstatement or omission; 2) of material fact; 3) made with the intent to defraud; 4) on which the plaintiff relied; and 5) which proximately caused the plaintiff's injury." *Williams*, 112 F.3d at 177 (citing *Cyrak v. Lemon,* 919 F.2d 320 (5th Cir. 1990)); *see also Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565

F.3d 200, 212 (5th Cir. 2009); *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001). Under Texas law, "fraud by [omission] requires proof of all the elements of fraud by affirmative misrepresentation, including fraudulent intent, with the exception that the misrepresentation element can be proven by [omission] of a material fact in *light of a duty to disclose*." *United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.,* 414 F.3d 558, 566 (5th Cir. 2005) (emphasis added); *Siragusa v. Arnold*, Civ. A. 3:12-cv-04497, 2013 WL 5462286, at *11 (N.D. Tex. Sept. 16, 2013) (Lynn, J.). However, if there is no duty upon a party to disclose information, there can be no fraud by nondisclosure. *See White v. BAC Home Loans Servicing, LP*, Civ. A. 3:09-cv-2484, 2010 WL 4352711, at *3 (N.D. Tex. Nov. 2, 2010) (Fish, J.). Wolfpack has failed to allege these required elements with particularity and, therefore, the claim should be dismissed.

30.     Additionally, Wolfpack has failed to allege facts showing that the Third Party Defendants owed Wolfpack a duty to disclose. "Before any duty may be found, there must first be proof of facts which give rise to it." *Ralston Purina Company v. McKendrick,* 850 S.W.2d 629, 636 (Tex. App. – San Antonio 1993, writ denied). The Complaint does not include any allegation that a duty existed or any factual allegations giving rise to any such duty, nor does the Complaint point to any document showing that any of the Third Party Defendants owed Wolfpack a duty to disclose. With no facts alleged to support such a duty, Wolfpack's claim of fraud based on alleged omissions of fact must be dismissed.

31.     Wolfpack's claim of fraud based on alleged misrepresentations likewise fails due to insufficient pleading. Specifically, the Complaint does not contain the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Williams*, 112 F.3d at 177. The only

allegations Wolfpack makes that can arguably relate to its claim for fraud are as follows:

- In reliance on the terms of the Original Distribution Agreement, the Exclusive Distribution Agreement, the representations of SB Partnership and its principals, and the continued success of the parties working together, Wolfpack expanded its distribution networks . . . (Dkt. # 50 at ¶ 14).

- Wolfpack held regular weekly meetings with SB Partnership during this time frame to discuss Wolfpack's marketing and distribution plans for SB Partnership's products and to coordinate those efforts with SB Partnership.
 . . .
 In fact, Tiffany Gresham and Larry Gresham encouraged Wolfpack to move forward with its expanded sales efforts, including the establishment of the warehouse distribution facility in Ireland. (*Id.* at ¶ 16).

- Specifically, in September of 2015, Wolfpack had meetings with SB Partnership, Larry Gresham and Tiffany Gresham to discuss the possibility of establishing a warehouse facility in Ireland to increase distribution of SB Partnership's products in Europe. … SB Partnership, Larry Gresham and Tiffany Gresham said that they would commit to this arrangement and encouraged Wolfpack to move forward with the Ireland facility. Wolfpack proceeded in reliance upon the representations of SB Partnership, Larry Gresham and Tiffany Gresham. (*Id.* at ¶ 17).

- In reliance upon the commitments of SB Partnership, Larry Gresham and Tiffany Gresham referenced above, Wolfpack invested substantial monies to the Ireland facility. (*Id.* at ¶ 19).

32.    The above allegations fail to state any specific fraudulent representations allegedly made by any of the Third Party Defendants. Nor are there any allegations stating which specific Third Party Defendant made such representations. Instead, Wolfpack vaguely alleges that the Third Party Defendants "would commit to this arrangement and encouraged Wolfpack to move forward[.]" *Id.* at ¶ 17.

33.    As described above, the "arrangement" was an alleged oral contract that is unenforceable under Texas law and the UCC. *See Supra* at II.B. Further, Wolfpack bases its meritless fraud claim on the vague phrase "encouraged" which does not state a specific alleged misrepresentation. Dkt. # 50 at ¶ 17. Wolfpack continues to make this vague assertion despite the

Third Party Defendants pointing out the lack of specificity in the Original Third Party Complaint. *See* Dkt. #23 at ¶ 16 (Orig. 3rd Party Complaint using "encouraged"); Dkt. #35 at ¶¶ 20, 34 (Third Party Defendants attacking the use of "encouraged"). Based on the allegations, Wolfpack has again failed to plead an alleged misrepresentation with specificity.

34.    Further, the Complaint references September 2015, but uses the vague phrase of "meetings" without describing the date(s) on which those meetings occurred. Dkt. # 50 at ¶ 17. Wolfpack points to no specific meeting or series of meetings in September 2015 that took place where "Tiffany Gresham and Larry Gresham encouraged Wolfpack" to continue its business venture. *Id.* Nor does the Complaint state how those meetings were conducted, whether it was by telephone, in-person, or otherwise. *Id.*

35.    Lastly, Wolfpack's Complaint never alleges what any of the Third Party Defendants "obtained" by the alleged fraud on Wolfpack. *Williams*, 112 F.3d at 177. Wolfpack makes no statement showing any gain by any of the Third Party Defendants beyond what they would have received under any of the alleged contracts discussed in the Complaint.

36.    Rather than plead with particularity, Wolfpack's newly amended Complaint again merely recites the required elements to bring a fraud claim. *See* Dkt. # 50. "Although [Wolfpack] recites the elements of fraud in [its] complaint, [it] fails to plead the time and place of the false representations or who made these representations" and what benefit they received, thus requiring this Court to dismiss all of Wolfpack's fraud claims. *Green v. JPMorgan Chase Bank, N.A.*, Civ. A. 3:11-CV-1498-N, 2012 WL 12823700, at *6 (N.D. Tex. Aug. 30, 2012) (Godbey, J.).

**D.     Wolfpack's Claim For Fees Against SB Products is Barred Under Texas Law**

37.    As its final claim, "Wolfpack seeks an award of reasonable attorneys' fees and

costs of court against SB Partnership, Tiffany Gresham and Larry Gresham pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code" for "SB Partnership's breach of the Exclusive Distributorship Agreement[.]" Dkt. # 50 at ¶ 41. The Court should dismiss Wolfpack's claim against SB Products because "under the plain language of section 38.001(8), a person may not recover attorney's fees against a partnership." *Fleming & Assocs., L.L.P. v. Barton*, 425 S.W.3d 560, 576 (Tex. App. – Houston [14th Dist.] 2014, pet. denied). Not only does section 38.001 exclude partnerships, but the "plain language of the statute excludes [all] unincorporated associations." *Greco v. Nat'l Football League*, 116 F. Supp. 3d 744, 751 (N.D. Tex. 2015) (citing *Ganz v. Lyons P'ship, L.P.*, 173 F.R.D. 173, 176 (N.D. Tex. 1997)).

38.     Texas follows the American Rule requiring each party to pay its own way unless a recovery of fees is specifically provided for by statute or contract. *See Epps v. Fowler*, 351 S.W.3d 862, 865 (Tex. 2011). Section 38.001 of the Texas Civil Practice and Remedies Code authorizes an award of attorney's fees to a "person" against "an individual or corporation." TEX. CIV. PRAC. & REM. CODE § 38.001. Texas courts have held that the specific language of section 38.001 precludes an award of fees against partnerships or limited liability companies. *See Choice! Power, L.P. v. Feeley*, Civ. A. 01–15–00821–CV, 2016 WL 4151041, at *8 (Tex. App. – Houston [1st Dist.] Aug. 4, 2016, no pet.); *Alta Mesa Holdings, L.P. v. Ives*, 488 S.W.3d 438, 452–53 (Tex. App. – Houston [14th Dist.] 2016, pet. denied); *Fleming & Assocs., L.L.P.*, 425 S.W.3d at 574.

39.     Wolfpack will undoubtedly cite *Bohatch v. Butler & Binion*, 977 S.W.2d 543 (Tex. 1998) for the proposition that Texas allows for an award of fees against a partnership under Section 38.001; however the Court should not rely on that case as it "did not address the issue of recoverability of statutory attorneys' fees from a defendant under the language of § 38.001

because the issue was not presented on appeal." *Traxxas, L.P. v. Dewitt*, Civ. A. 4:14CV733, 2015 WL 7777986, at *7 (E.D. Tex. Dec. 2, 2015).

40.     "Although the Supreme Court of Texas has not yet considered the issue, *Texas courts of appeals and federal courts interpreting § 38.001 have* **uniformly held** *that the term 'individual' refers to 'humans' and does not include partnerships*, limited partnerships, limited liability partnerships, governmental subdivisions, or 'other legal entities.'" *Hoffman v. L & M Arts*, Civ. A. 3:10-CV-0953-D, 2015 WL 1000838, at *5 (N.D. Tex. Mar. 6, 2015), *aff'd*, 838 F.3d 568 (5th Cir. 2016) (Fitzwater, J.) (emphasis added) (collecting cases). Therefore, the Court should ignore Wolfpack's attempt to rewrite Texas law and find that section 38.001 is inapplicable to SB Products.

41.     Wolfpack alleges that SB Products is a Texas partnership. *See* Dkt. # 50 at ¶ 2 (Wolfpack's 1st Am. Third Party Complaint). As a partnership, Texas law forbids an order being entered requiring the payment of attorneys' fees by SB Products pursuant to Section 38.001. *See Fleming & Assocs., L.L.P.*, 425 S.W.3d at 576. The Court should follow Texas precedent in denying Wolfpack's claim for fees under Section 38.001 to uphold the "nub of the policy that underlies Erie R. Co. v. Tompkins" that "the same transaction [giving rise to a suit] in a federal court instead of in a State court a block away, should not lead to a substantially different result." *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 109 (1945). Because Wolfpack can make no claim under Section 38.001 against SB Products, the claim for fees must be dismissed with prejudice.

**E.     Wolfpack's Claim For Fees Against The Greshams Must Be Dismissed**

42.     Wolfpack also brings a claim for attorneys' fees against both Tiffany and Larry Gresham under "Chapter 38 of the Texas Civil Practice and Remedies Code." Dkt. # 50 at ¶ 41. Wolfpack seeks to hold the Greshams liable, as alleged general partners, for any debt of SB

Products, an alleged general partnership. *See* TEX. BUS. ORGS. CODE § 152.304 ("… all partners are jointly and severally liable for all obligations of the partnership …"). However, as shown above, SB Products can never be liable for attorneys' fees under TEX. CIV. PRAC. & REM. CODE § 38.001. *See supra* at II. D.

43.      "[A] partnership's acts are only its own, not a partner's." *Am. Star Energy & Minerals Corp. v. Stowers*, 457 S.W.3d 427, 431 (Tex. 2015), *reh'g denied* (May 1, 2015). A partner is liable for the partnership's actions "only by operation of the statute." *Id.*   If the partnership has no liability, then the partner also has no liability individually. Therefore, because SB Products can never be liable for attorneys' fees under section 38.001, then no personal liability can fall to the Greshams as alleged general partners of SB Products.

44.      Likewise, the Greshams are not personally liable under section 38.001 as no contract exists between them and Wolfpack. In fact, the Complaint alleges facts related only to two unenforceable contracts, the alleged Exclusive Distribution Agreement and the alleged Ireland Agreement. *See supra* at II. B. Wolfpack cannot rely on the two unenforceable contracts to sue the Greshams individually as the alleged contracts were made with SB Products, a partnership, alone. *See Stowers*, 457 S.W.3d at 429 ("As an independent entity, a partnership may enter into contracts in its own name, may own its own property, and may sue and be sued in its own name. *See* TEX. BUS. ORGS. CODE § 152.101; TEX. R. CIV. P. 28."). Wolfpack has not pled that a contract existed between Wolfpack and the Greshams. Nor has Wolfpack pled any facts to allow the Court to infer a contract existed between Wolfpack and the Greshams individually. Without a contract existing between Wolfpack and the Greshams, Wolfpack cannot sustain its claim for fees against the Gresham pursuant to section 38.001. *See* CIV. PRAC. & REM. CODE § 38.001(8). Because SB Products cannot be liable under section 38.001 and no contract

exists upon which to base a claim for individual liability against the Greshams, Wolfpack cannot maintain a claim for fees against the Greshams.

45.     Lastly, Wolfpack's claim for fees must be dismissed because it has not pled a valid and enforceable contract. "The most basic requirement of [section 38.001] is that the party seeking attorney fees must first prevail on a valid contract claim." *Heritage Constructors, Inc. v. Chrietzberg Elec., Inc.*, Civ. A. 06-14-00048-CV, 2015 WL 3378377, at *13 (Tex. App. – Texarkana Mar. 4, 2015, no pet.) (internal quotations omitted). As Wolfpack has failed to allege an enforceable contract, Wolfpack can never recover for a "valid contract claim" and, therefore, the Court should dismiss Wolfpack's claim for fees with prejudice.

**F.     The Complaint's Vagueness Prevents Movants From Responding**

46.     While the Third Party Defendants believe the Court should dismiss all of Wolfpack's claims against them with prejudice, if the Court disagrees, the Third Party Defendants alternatively move the Court to order Wolfpack to replead to properly allege its claims in compliance with the Federal Rules of Civil Procedure. Not only does the Complaint fail to allege each cause of action properly, as shown above, but Wolfpack has made ambiguous pleadings that prevent the Movants from preparing an answer. *See* FED. R. CIV. P. 12(e).

47.     Wolfpack makes the following imprecise pleadings regarding its claims that prevent Movants from responding:

- "In 2014, the Original Distribution Agreement was replaced by mutual agreement of the parties with an Exclusive Distribution Agreement (the "Exclusive Distribution Agreement"), a true and correct copy of which is attached hereto as Exhibit B and incorporated by reference." Dkt. # 50 at ¶ 10. Wolfpack fails to state or identify the "parties" to which it refers. *See id.* Nor does Wolfpack state how the document was "replaced." Likewise, Wolfpack has attached an unexecuted document as Exhibit B, yet claims it is enforceable. *Id.* at 19.

- "At that time, a copy of the Exclusive Distributorship Agreement was sent to SB Partnership." *Id.* at ¶ 11. Wolfpack fails to allege when the alleged Exclusive

Distribution Agreement was sent to SB Products and points to no date SB Products allegedly received it.

- "SB Partnership represented to Wolfpack that it accepted and would sign that contract and gave Wolfpack written confirmation of its acceptance of the contract through a series of emails. A true and correct copy of one of those emails is attached hereto as **Exhibit C** and incorporated by reference." *Id.* (emphasis in original). Wolfpack fails to allege facts showing that SB Products agreed to the alleged Exclusive Distribution Agreement. The exhibit cited by Wolfpack does not show acceptance of any alleged contract by SB Products. As explained herein, Exhibit C shows nothing more than two entities negotiating a contract, not that they entered into said contract.

- "Additionally, throughout the relationship between the parties, the terms of the Exclusive Distributorship Agreement were acknowledged and its terms were followed in numerous ways including, inter alia, email communications, placing orders for product, delivering product, paying for product, marketing product, etc." *Id.* at ¶ 12. This allegation fails to state how the actions alleged show that the parties agreed to the alleged Exclusive Distribution Agreement. In fact, the actions stated are typical of a buyer-seller relationship regardless of whether an enforceable distribution agreement was in place.

- "In reliance on the terms of the Original Distribution Agreement, the Exclusive Distribution Agreement, the representations of SB Partnership and its principals, and the continued success of the parties working together, Wolfpack expanded its distribution networks and made continuous and systematic purchases of e-liquid products from SB Partnership in order to exercise its exclusive right to market and sell those products." *Id.* at ¶ 14. This paragraph does nothing more than allege the elements of a cause of action and gives no factual support for these assertions. Nor does it explain how Wolfpack relied on an agreement – the Original Distribution Agreement – that was allegedly replaced.

- "Wolfpack held regular weekly meetings with SB Partnership during this time frame to discuss Wolfpack's marketing and distribution plans . . ." *Id.* at ¶ 16. The phrase "this time frame" is ambiguous as no time frame is given.

- "At no time during this time frame did SB Partnership, Tiffany Gresham or Larry Gresham mention any plans to terminate the Exclusive Distribution Agreement." *Id.* Wolfpack fails to allege how an unenforceable, unsigned contract could be terminated when it was never in effect. Further, the Complaint vaguely references "this time frame" with no parameters to said "time frame." Lastly, Wolfpack has failed to allege how or why the Movants had a duty to disclose any information to Wolfpack.

- "In fact, Tiffany Gresham and Larry Gresham encouraged Wolfpack to move forward with its expanded sales efforts, including the establishment of the warehouse distribution facility in Ireland." *Id.* Wolfpack fails to allege how either of the

Greshams "encouraged" Wolfpack to take any action. Nor does Wolfpack allege when such alleged encouragement occurred.

- "Specifically, in September of 2015, Wolfpack had meetings with SB Partnership, Larry Gresham and Tiffany Gresham to discuss the possibility of establishing a warehouse facility in Ireland to increase distribution of SB Partnership's products in Europe. Wolfpack stated that it would fund the up-front costs of that venture if: (i) SB Partnership would provide discounted prices to Wolfpack for SB Partnership products that would be sold in Europe through the new facility in Ireland; and (ii) SB Partnership, Larry Gresham and Tiffany Gresham would commit to a long term arrangement for Wolfpack to be the exclusive distributor of SB Partnership products in Europe so that Wolfpack could recoup the costs associated with the establishment of the Ireland facility. SB Partnership, Larry Gresham and Tiffany Gresham said that they would commit to this arrangement and encouraged Wolfpack to move forward with the Ireland facility. Wolfpack proceeded in reliance upon the representations of SB Partnership, Larry Gresham and Tiffany Gresham. Without the agreement of SB Partnership, Larry Gresham and Tiffany Gresham to this arrangement, Wolfpack would not have proceeded with the Ireland venture." *Id.* at ¶ 17. Wolfpack alleges an unenforceable oral contract and fails to explain how it relied on such unenforceable contract.

- "At no time prior to the wrongful termination of the Exclusive Distributorship Agreement did SB Partnership, Tiffany Gresham or Larry Gresham tell Wolfpack that they were withdrawing their commitments referenced above or that they had intentions of severing their relationship with Wolfpack." *Id.* at ¶ 18. Wolfpack fails to state which alleged "commitments" it is referring to when it has referenced three separate alleged contracts by this point in its Complaint. Nor does Wolfpack explain how an unenforceable, unsigned contract, whether allegedly written or oral, could be terminated when it was never in effect. Further, Wolfpack has failed to allege how or why the Movants had a duty to disclose any information to Wolfpack.

- "Upon information and belief, and as shown herein, the affirmative representations made by SB Partnership, Tiffany Gresham and Larry Gresham referenced above constitute false statements of material facts made with the intent to defraud Wolfpack. Wolfpack relied on those false statements and was injured thereby as described herein." *Id.* at ¶ 20.  This paragraph does nothing more than state the basic elements of a cause of action for fraud, but Wolfpack does not state with specificity what facts apply to which of these elements.

- "In the spring of 2016, while the Exclusive Distribution Agreement was still in full force and effect …" *Id.* at ¶ 21. Wolfpack fails to allege how an unenforceable, unsigned contract was in full force and effect when it was never entered into.

- "Since that time, Wolfpack has learned that SB Partnership was in fact marketing some of its products through Triton before the purported termination of the Exclusive

Distribution Agreement in violation of that agreement." *Id.* at ¶ 24. Wolfpack vaguely references "since that time" without giving Movants notice as to what period it is discussing. Further, Wolfpack fails to state with particularity what "violation" occurred and does not define the ambiguous term "marketing some of its products." Nor does Wolfpack explain how any violation could occur of an unenforceable agreement.

- "Wolfpack incurred substantial losses . . . having to quickly sell-off all SB Partnership's products in its inventory[.]" *Id.* at ¶ 29. The Complaint fails to allege why Wolfpack was forced to "quickly" sell off its inventory.

- ". . . the aforementioned conduct was with malice and intent to cause harm to Wolfpack . . ." *Id.* at ¶ 36. Wolfpack has pled no facts showing, alleging, or intimating either malice or intent on the part of any of the Third Party Defendants.

48.     Based on the foregoing, Third Party Defendants are unable to properly respond because doing so would greatly prejudice them in attempting to answer Wolfpack's poorly pleaded Complaint. *See Priority Assist, Inc.,* 2016 WL 4479529 at *2. As Wolfpack's Complaint is excessively vague, the Third Party Defendants respectfully move this Court for an order requiring Wolfpack to replead if the Court does not dismiss with prejudice the claims against the Third Party Defendants.

## IV.
## CONCLUSION

For the foregoing reasons, the Court should grant the Third Party Defendants' Motion and dismiss with prejudice the claims of breach of contract, fraud, and the request for attorneys' fees contained in the First Amended Third Party Complaint filed by Third Party Plaintiff Wolfpack Wholesale, Inc. pursuant to Rule 12(b)(6). Or, in the alternative, the Court should order Wolfpack to amend its Complaint to properly state its claims and correct the pleading deficiencies identified herein.

Dated: October 20, 2017                    Respectfully submitted,

                                           **ZIMMERMAN, AXELRAD, MEYER,**
                                           **STERN & WISE, P.C.**

                                           By:      **/s/ Brian W. Zimmerman**
                                                    Brian W. Zimmerman
                                                    State Bar No. 00778746
                                                    bzimmerman@zimmerlaw.com
                                                    3040 Post Oak Blvd., Suite 1300
                                                    Houston, Texas  77056-3813
                                                    (713) 552-1234 Telephone
                                                    (713) 212-2750 Facsimile
                                           **ATTORNEYS FOR THIRD PARTY**
                                           **DEFENDANTS SB PRODUCTS, TIFFANY**
                                           **GRESHAM, and LARRY GRESHAM**

## CERTIFICATE OF CONFERENCE

On October 18 and 19, 2017, Plaintiff's counsel conferred by email and telephone with James Morris, Wolfpack's counsel, to confer with respect to the above motion insofar as the motion includes, in the alternative, a motion for a more definite statement. The parties were unable to come to an agreement, but it is assumed Wolfpack's counsel is opposed to the requested relief.

                                           By:      **/s/ Brian W. Zimmerman**
                                                    Brian W. Zimmerman

## CERTIFICATE OF SERVICE

On October 20, 2017, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or *pro se* parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

| | | |
|---|---|---|
| *Via electronic service:*<br>James W. Morris Jr.<br>Brooke Ginsburg<br>MORRIS & SCHORSCH, P.C.<br>8080 N. Central Expressway,<br>Suite 1300<br>Dallas, Texas 75206<br>jmorris@mstxlaw.com<br>bginsburg@mstxlaw.com<br>**Attorneys for Defendants and Third Party Plaintiff** | *Via electronic service:*<br>Robert J. Bogdanowicz III<br>rob@cbsattorneys.com<br>Mary Madden Melle<br>mmelle@cbsattorneys.com<br>Calhoun, Bhella & Sechrest,<br>LLP<br>325 N. Saint Paul St.,<br>Ste. 2300<br>Dallas, Texas 75201<br>**Attorneys For Third Party Defendants White Lion Investments, LLC d/b/a Triton Distribution And Todd Wages** | *Via electronic service:*<br>Radney Hamilton Wood<br>Vela Wood, P.C.<br>600 Congress Ave., Suite 1400<br>Austin, Texas 78701<br>rwood@velawoodlaw.com<br>**Attorneys for Eric Turner, Kevin Thurman, and Matthew Weiner** |

By:  **/s/ Brian W. Zimmerman**
Brian W. Zimmerman